Argued at Pendleton May 6; affirmed June 11; rehearing
denied September 3, 1946

# LOWE *v.* HARMON
(169 P. (2d) 887)

312

Forrest L. Hubbard, Judge.

*Harold Banta* (Hallock, Donald & Banta, of Baker, on the brief), for appellant.

*A. S. Grant* (Heilner, Grant & Fuchs, of Baker, on the brief), for respondent.

Before Belt, Chief Justice, and Rossman, Lusk, Brand and Hay, Justices.

BRAND, J.

The case comes to this court for the second time. The first appeal was taken by the plaintiff Lowe, and the cause was reversed and remanded to the circuit court for further proceedings pursuant to the opinion of this court. *Lowe v. Harmon,* 167 Or. 128, 115 P. (2d) 297.

The history of the controversy is fully set forth in our first opinion and will be repeated here only in brief outline. It is sufficient to say that on the 11th day of March, 1939, the plaintiff gave to the defendant an option which reads as follows:

"FOR AND IN CONSIDERATION OF THE SUM OF ONE DOLLAR ($1.00) and other valuable consideration to me in hand paid by L. P. Harmon, party of the second part, I, Grace Lowe, party of the first part do hereby grant to him an option to buy a one-half interest in the John Dickson Estate consisting of approximately 320 acres near Sumpter, Oregon, for the sum of $3,500 less one-half of the selling price of the timber upon this estate whatever that may be.

"Witness my hand this 11th day of March, 1939.

"GRACE LOWE"

On the same day the plaintiff executed a power of attorney as follows:

"Seattle, Wash., March 11, 1939.

"Know All Men By These Presents That I, the undersigned, do hereby appoint L. P. Harmon as my attorney in fact to sell any timber on the Dickson Estate for me the same as I could if present, to sign my name, payments to be deposited to my credit in savings account at the National Bank of Commerce, Seattle, Wash. It is agreed that said timber will be paid for as cut. This power of attorney is only for the purpose of sale of timber on this estate, said estate consisting of 320 acres of

which I am at present lawful owner.   Mr. Harmon holds an option to buy half interest.

"Witness my hand this 11th day of March, 1939.

"Grace Lowe."

On December 8, 1939, plaintiff brought suit wherein she sought a declaratory judgment to the effect that the option was invalid or had expired.

After trial, and on March 25, 1940, the circuit court for Baker County, by Judge C. H. McColloch, made and entered a judgment wherein the option was set forth in *haec verba,* and it was held that said option agreement was and is now valid and binding upon the plaintiff.   The judgment further provided:

" * * * That a reasonable time within which defendant may exercise said option is a period of six months from the date of this judgment, and the defendant is hereby allowed said time within which to exercise the same, by paying said sum of $3,500 as aforesaid together with interest thereon at the rate of six per cent (6%) per annum from the date of this judgment until paid * * *."

On September 24, 1940, the defendant tendered to the clerk of the circuit court for the benefit of the plaintiff the sum of $3,605 ($3,500, plus interest as required by the declaratory judgment).   The written instructions which accompanied the tender were as follows:

"This tender is made to you as Clerk of said Court for the purpose of exercising the said option above referred to and you are instructed to deliver the said sum of money to the said Grace Lowe upon her making, executing and delivering to the undersigned, or to you on behalf of the undersigned, a good and sufficient deed conveying to the undersigned an undivided one-half interest in

and to the said property referred to. The undersigned is entitled to a credit against said sum on account of money received by said Grace Lowe from the sale of timber from said premises and at the time of delivery of said money she should be requested to furnish a statement as to such sales and thereupon the amount of the credit should be withheld from the sum tendered herewith, and returned to the undersigned."

On October 22, 1940, the plaintiff transmitted to the clerk a bargain and sale deed covering an undivided one-half interest in the property in suit and instructed the clerk in writing that the plaintiff rejected the conditions imposed in defendant's letter of September 24 for the stated reason that the declaratory judgment of the court had eliminated from the option the provision "regarding any offsets for sales of timber". Accordingly, the clerk was instructed to deliver the deed to the defendant only upon the unconditional payment of the full sum of $3,605. Thereafter the plaintiff refused defendant's tender and secured the return of the deed.

On November 16, 1940, the defendant filed a petition for supplemental relief wherein he set forth the history of the transaction and alleged that a statement of the timber sales was requested for the reason that the defendant was entitled to certain credits on the purchase price to the extent of one half of the amount of the timber sales and that plaintiff had admitted the receipt of $23.35 but refused to account for that or any amount to the defendant. Among other matters, the defendant prayed for a supplemental declaration that the defendant's tender was valid and for an order requiring the plaintiff to submit a statement of the receipts from any timber sales and to

allow credit on the purchase price. The petition also prayed for certain corrections in the form of the deed, the delivery of which was demanded from the plaintiff.

The plaintiff answered the petition setting up affirmative defenses. On January 2, 1941, the circuit court sustained a demurrer to the affirmative answer of the plaintiff to the defendant's petition for supplemental relief. The plaintiff refused to plead further, and the court on the same day entered its judgment and decree.

By the decree it was held that the plaintiff had refused to execute a deed proper in form for reasons specified and had refused to allow "credit on the purchase price of one-half of the money which she admits she had received from the sale of timber, and has refused to make any accounting for any further moneys which she may have received". It was further held that the payment of the money by the defendant into court was in accordance with the order of the court and in full compliance therewith, that the defendant was entitled to credit, and that it was proper to request from plaintiff, "before turning over to her said moneys, a statement of moneys received by her from the sale of timber, and to allow as credit on the purchase price of said premises of one-half thereof". It should be noted that the decree granting supplemental relief was rendered by the same judge who had decided the original declaratory judgment suit.

Upon the appeal to this court, we held that the circuit court had jurisdiction to render supplemental relief, and held further that any state of facts which disclosed that the defendant was not justified in imposing the conditions which attended his deposit with the clerk of the court would be proper defensive matter

which might be pleaded by the plaintiff. We found that the plaintiff in her answer to the petition for supplemental relief had alleged that the defendant had received an amount in excess of that which plaintiff had received from the sale of the timber.

We held that

"If plaintiff could prove that defendant had received as much as, or more than, he was entitled to receive from the sales of timber, defendant could not justly demand any statement from plaintiff or the allowance of any credit on the purchase price as a prerequisite to the payment of the amount decreed by the first adjudication herein to be the amount defendant should pay for an undivided one-half interest in the property in suit." *Lowe v. Harmon,* supra.

By reason of the fact that the plaintiff's answer to the petition for supplemental relief had alleged facts which if proven would render improper the condition which the defendant had imposed in connection with his tender of the purchase price, we held that defendant's demurrer to the plaintiff's answer should have been overruled. The decree of the circuit court was therefore reversed, and the case was sent back for determination of the issue. We said:

"If plaintiff prevails upon that issue, the result would be unavoidable that an unjustified condition was required of plaintiff by defendant as a condition precedent to the payment of the purchase price, and, hence, a valid tender was not made.

"If, on the other hand, it appears that there are credits due to defendant for said sales, and the amount thereof is shown, then such credits may be confirmed by the court. * * *

"If there are credits due to him, the amount of his tender under the original decree herein may

be properly reduced to conform to such credits * * *. If no credits are due to defendant, plaintiff is entitled to a decree to the effect that the option in suit has expired." *Lowe v. Harmon,* supra.

■ Following the issuance on July 15, 1941, of a mandate of this court directing further proceedings consistent with our opinion, the defendant filed a reply to the affirmative answer of the plaintiff to the defendant's petition for supplemental relief. Upon motion of the plaintiff the cause was reopened for the taking of further testimony. Upon the trial, which commenced on January 4, 1944, the issue for determination was defined and limited not only by the pleadings, but by the ruling of this court on the first appeal. The issues decided upon the first appeal, and which we have only mentioned, were no longer before the trial court.

After trial the circuit court, by Judge Forrest L. Hubbard, made findings of fact in which the history of the litigation was again set forth. Among other matters it was found that the defendant was entitled to a credit of $5.83 against the $3,605 which defendant had deposited with the clerk. It was then decreed that the defendant had made a valid tender in the sum of $3,605 and that a credit of $5.38 should be deducted therefrom. The clerk of the court was directed to tender to the plaintiff $3,599.17, and the plaintiff was directed to deliver to the clerk the deed already tendered with a modification with which we are not now concerned. It was further decreed that in the event that the plaintiff failed to tender the deed the decree should stand as the conveyance of the property in issue. From this decree the plaintiff has again appealed.

■ The plaintiff contends in substance that the original declaratory judgment eliminated (whether rightly or wrongly) the entire question with reference to credit for timber sales. She relies upon the language of the original declaratory judgment, quoted supra, which provides that "defendant may exercise said option * * * by paying said sum of $3,500 * * * with interest". She contends that that decree became final and that by inference the entire issue concerning timber sales became immaterial. With this contention we are unable to agree.

The original decree was perhaps not artistically drawn, but it will be recalled that the court found that the option "above set forth is adjudged and declared to be valid and binding". The option thus validated provided that the purchase price should be $3,500, less one half of the selling price of the timber upon the estate; and the decree provided that the defendant may exercise said option "by paying said sum of $3,500 *as aforesaid,* together with interest". (Italics ours.) The internal evidence strongly indicates that the court did not intend to eliminate that provision from the option when it employed the language above quoted. It will be remembered that Judge McColloch, who rendered the original declaratory judgment, also decided the case upon the petition for supplemental relief from which decision the first appeal was taken. In that decision he held that the option which he had construed in the original declaratory judgment suit provided for credit from timber sales, and the clerk was directed to pay over to the plaintiff the money tendered by the defendant, less one half of the proceeds of timber sales.

While this court reversed the decree of Judge McColloch, it also held that if there are credits due

defendant the amount of his tender may be properly reduced to conform to such credits, and it was for the determination of the issue of credits for timber sales that the cause was reversed and remanded. The proper construction of the original declaratory judgment was determined by the decision of this court. Judge Hubbard properly considered himself bound by it and upon trial decided the issue which we had defined.

It remains to be determined whether the trial court erred in finding upon the facts that the defendant was entitled to a credit of $5.83 on the purchase price.

In her answer to defendant's petition for supplemental relief, the plaintiff alleged that after the execution of the power of attorney the defendant "sold, traded or otherwise disposed of a substantial portion of the timber from the said property but wholly failed and neglected to account to plaintiff for the proceeds of said sales". We have examined the entire record and find no evidence that the defendant ever received a penny from any sale of timber covered by the option or the power. On the other hand, it is conclusively proven that the plaintiff collected from one Dyke $23.35, which was the full purchase price of timber sold to Dyke. On December 7, 1939, the plaintiff gave to J. S. Dyke a receipt acknowledging full payment for logs taken from the property.

There is a direct conflict of testimony as to the circumstances concerning the transaction with one Moore. The plaintiff contends, and the defendant denies, that a sale of timber was made by the defendant to Moore. The evidence establishes that Moore cut timber of the value of about $12, but he never paid either the plaintiff or the defendant therefor. Plain-

tiff contended that a trade was negotiated whereby the defendant was to receive lumber for his personal use in exchange for timber sold to Moore. Both the defendant and Moore testified that there was no trade. Moore acknowledged that the defendant paid for the lumber which he had bought, and testified further:

"Q And as a matter of fact, Mr. Harmon never told you at any time that he would take lumber for this timber?

"A He never told me at any time that he would take lumber for timber.

"Q Did you tell Grace Lowe that as soon as you were satisfied she should have the money you would pay her?

"A I have told her that several times.

"Q You told her that back in December, 1939?

"A I am sure I did."

There is also a conflict of testimony involving questions of credibility as to the circumstances of the Dyke transaction. Plaintiff contends, and defendant denies, that there was an agreement between the defendant and Dyke whereby the defendant was to take lumber for his personal benefit in payment of $23.35 worth of timber purchased by Dyke. But, as we have said, it is undisputed that the plaintiff herself collected the money for the timber, and it is also undisputed that the defendant paid Dyke in full for the lumber which he purchased.

■ If there is any ambiguity as to the meaning of the agreement between plaintiff and defendant, their practical construction of it should remove the uncertainty.

The plaintiff in a letter to Mr. Dyke on September 19, 1939, wrote as follows:

"Mr. Harmon does not have the authority to collect for any timber and payments were to be

made by you for my credit at the National Bank of Commerce at Seattle, Wash.''

The defendant also testified as follows:

"Q Did you or did you not tell John Dyke you didn't have any right to collect that money yourself?

"A I did."

■ We conclude that defendant neither received nor was authorized to receive payment from the purchasers of timber. It appears that the $23.35 was not sent by Dyke to the bank at Seattle, but was paid direct to the plaintiff or her representative. But that fact would not in our opinion relieve her from the duty of accounting for the amount of the money received.

The trial court found that the expense to the plaintiff of collecting the sum of $23.35 from J. S. Dyke was $11.68, leaving a balance of $11.67 as the net amount realized from the sale. He accordingly found that the defendant was entitled to a credit of $5.83 as against the $3,605 which he had deposited with the clerk, leaving a balance of $3,599.17 to which the plaintiff is entitled in return for her deed.

■ The trial court delivered a carefully considered opinion from the bench in which it was said:

"Therefore, the only conclusion this court can come to at this time, after carefully reading and studying the decision of the Supreme Court in this case is, that the question of whether the defendant is entitled to any credits on account of sales of timber from the lands involved in this case, * * * is the question which the Supreme Court has charged this court with the duty of determining, after a complete hearing and taking of testimony thereon."

The trial court correctly construed our previous opinion. In so far as the decision of any material issue of this case may have depended upon questions of credibility, we accept the conclusions of the trial court who saw and heard the witnesses. The case received careful consideration below. We are in accord with the findings of fact as entered, and the decree of the court is affirmed in full. The defendant may have his costs and disbursements.